**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| VINCE MURPHY, individually and on behalf of all others similarly situated, | ) ) ) Case  No.: |
| Plaintiff, | ) ) ) |
| v. | ) ) **COMPLAINT-CLASS ACTION** |
| HOME DEPOT, INC., | ) **JURY TRIAL DEMANDED** ) ) |
| Defendant. | ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Vince Murphy brings this Consolidated Class Action Complaint against Defendant Home Depot, Inc. ("Defendant" or "Home Depot"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      In or around April 2014, thieves began accessing the point-of-sale payment systems at Home Depot locations throughout the United States and Canada, stealing customers' debit and credit card information including card numbers, account holders' names, and the city, state, and ZIP code of the Home Depot store where the card was used.  In September 2014, this information began surfacing for sale on "rescator.cc," a website known for trafficking in stolen card data.

2.      Home Depot claims that it did not become aware of any potential breach until September 2, 2014, approximately five months after the breach first began.

3.      On September 8, 2014, Home Depot confirmed both that the breach had taken place and that customers' personal information was indeed taken.

4.      Plaintiff brings this class action against Home Depot for its failure to secure and safeguard his and other customers' personal financial data.  Home Depot's inadequate security allowed the thieves to steal financial data from within Home Depot's stores, make unauthorized purchases on customers' credit and debit cards, and otherwise put Class members' financial information at serious and ongoing risk. These thieves continue to use the information they obtained as a result of Defendant's inadequate security to exploit and injure Class members throughout the United States.

5.      Home Depot failed to uncover and disclose the extent of the Breach and notify its affected customers of the Breach in a timely manner, preventing Class members from protecting themselves from the Breach.

6.      Plaintiff, on behalf of himself and other members of the Class, asserts claims for breach of implied contract and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*., and seeks injunctive relief, declaratory relief, monetary damages, statutory damages, and all other relief as authorized in equity or by law.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000

exclusive of interest and costs, and there are numerous class members who are citizens of States other than Defendant's state of citizenship.[1]

8.     This Court has personal jurisdiction over Home Depot because Home Depot maintains its principal place of business in Atlanta, Georgia and conducts substantial business in the State of Georgia such that it has significant continuous and pervasive contacts with this State. Home Depot also maintains numerous locations and employees in Georgia, including locations compromised in the Breach.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(2), and 1391(c)(2) as: a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this District, and Home Depot resides and conducts substantial business in this District.

## PARTIES

10.     Vince Murphy is citizen of the State of Illinois and currently resides in Crystal Lake, IL.  Plaintiff made purchases with his debit card at a Home Depot location in Algonquin, IL on June 23, 2014 and July 28, 2014.  As a result, Plaintiff entered into an implied contract with Home Depot for the adequate protection of his card information and had his sensitive financial information exposed as a result of Defendant's inadequate security.

11.     Home Depot, Inc., is a Delaware corporation headquartered in Atlanta, Georgia. Home Depot is one of the largest retailers in the world, with more than 2,400 retail locations in the United States, Canada, and Mexico.

---

[1] As stated below in more detail including but not limited to paragraph 13, the allegation that damages in this matter exceeds $5 million is based upon information and belief that the total number of credit [and debit] card numbers stolen at Home Depot could top 60 million, making this the largest data breach ever.  The Attorneys General for California, Connecticut, Illinois, Iowa, and New York have already launched a joint probe into the Breach.

## FACTUAL BACKGROUND

### I.    *Details Regarding the Breach*

12.    On its website, Home Depot states that, on September 2, 2014, it first became aware of a potential data breach involving the theft of its customers' credit card and debit card data (the "Breach").[2]

13.    Thereafter, Defendant's forensics and security teams, working with the U.S. Secret Service and outside security firms, launched an investigation into the attack.    On September 8, 2014, Home Depot announced that its investigation had confirmed that customers' data had been compromised, and that the Breach could affect customers who shopped at any of its 2,000+ locations in the United States and Canada using a credit or debit card "in 2014, from April on."    According to one person briefed on the investigation, "the total number of credit [and debit] card numbers stolen at Home Depot could top 60 million,"[3] making this the largest data breach ever.    The Attorneys General for California, Connecticut, Illinois, Iowa, and New York have already launched a joint probe into the Breach.[4]

14.    Even before Home Depot confirmed the Breach, criminals had already begun putting the stolen information to nefarious use.    On September 2, 2014, banks began reporting evidence that Home Depot stores were the likely source of stolen card data that had surfaced at rescator.cc, an underground cybercrime shop that also sold millions of cards stolen during Target's recent security breach.    Brian Krebs, the security blogger who first broke the story of

---

[2] https://corporate.homedepot.com/MediaCenter/Documents/FAQs.pdf (last visited September 10, 2014).
[3] http://bits.blogs.nytimes.com/2014/09/08/home-depot-confirms-that-it-was-hacked/?_php=true&_type=blogs&_r=0 (last visited September 10, 2014).
[4] http://www.newsweek.com/home-depot-data-breach-could-match-targets-biggest-ever-269286 (last visited September 10, 2014).

the Breach, has reported that a comparison of the ZIP code data between the unique ZIPs represented on rescator.cc and those of the Home Depot stores revealed an overlap of more than 99.4%, .[5]   According to Nicholas Weaver, a researcher at the International Computer Science Institute (ICSI) and at the University California, Berkeley, "[a] 99+ percent overlap in ZIP codes strongly suggests that this source is from Home Depot."

15.    The stolen card data being sold on rescator.cc includes both the information needed to fabricate counterfeit cards as well as the legitimate cardholder's full name and the city, state and ZIP of the Home Depot store from which the card was stolen, allowing for the hackers and/or subsequent purchasers of the information to quickly and accurately identify the Social Security number and date of birth of cardholders, placing their identities at even further risk.  As Krebs explains:

> Why do the thieves need Social Security and date of birth information? Countless banks in the United States let customers change their PINs with a simple telephone call, using an automated call-in system known as a **Voice Response Unit** (VRU). A large number of these VRU systems *allow the caller to change their PIN provided they pass three out of five security checks*.[6]

16.    These precise kinds of fraudulent transactions have already taken place.   On September 8, 2014, one bank reported losing more than $300,000 in two hours to PIN fraud on multiple debit cards that had all recently been used at Home Depot.[7]   Other financial institutions

---

[5] http://krebsonsecurity.com/2014/09/data-nearly-all-u-s-home-depot-stores-hit/ (last visited September 10, 2014).
[6] *Id.*(emphasis in original).
[7] *Id.*

have reported a steep increase in fraudulent ATM withdrawals on customer accounts in the last week.[8]

17.    The malicious software ("malware") used in the attack was a variant of "BlackPOS," a malware strain designed to siphon data from cards when they are swiped at infected point-of-sale systems.[9]   A number of retailers, banks and card companies have responded to recent security breaches by adopting the use of microchips in U.S. credit and debit cards to make transactions more secure.  Home Depot did not have any such technology in place at any time during the Breach, though it has now announced that it plans to have chip-enabled checkout terminals in all U.S. stores by the end of 2014.[10]

18.    The Breach was caused and enabled by Defendant's knowing violation of its obligations to abide by best practices and industry standards in protecting customers' personal information.  Home Depot grossly failed to comply with security standards and allowed its customers' financial information to be compromised, all in an effort to save money by cutting corners on security measures that could have prevented or mitigated the Breach that occurred.

19.    Defendant's failure to comply with reasonable security standards provided Home Depot with short-term and fleeting benefits in the form of saving on the costs of compliance, but at the expense and to the severe detriment of its own customers – including Class members here – who have been subject to the Breach or otherwise have had their financial information placed at serious and ongoing risk.

---

[8] *Id.*
[9] http://krebsonsecurity.com/2014/09/home-depot-hit-by-same-malware-as-target/ (last visited September 10, 2014).  The BlackPOS malware was also used in the Target security breach. *Id.*
[10] http://money.msn.com/business-news/article.aspx?feed=AP&date=20140909&id=17914998&ocid=ansmony11 (last visited September 10, 2014).

20.     Home Depot allowed widespread and systematic theft of its customers' financial information.  Defendant's actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect customers' financial information.

## II.     *Security Breaches Result in Identity Theft*

21.     The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use personal identifying information ("PII") to open financial accounts, receive government benefits, and incur charges and credit in a person's name.[11]   As the GAO Report states, this type of identity theft is the most harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating.  In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."

22.     Another recent study conducted by the National Consumers League found that 72 percent of fraud victims also were victims of data breaches, suggesting a strong link between breaches and fraud.[12]

23.     According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation, and can take time, money, and patience to

---

[11] *See* http:///www.gao.gov/new.items/d07737.pdf .
[12] http://www.sdbmagazine.com/study-links-data-breach-fraud.aspx (last visited September 10, 2014).

resolve.[13]   Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[14]

24.     A person whose PII has been compromised may not see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

25.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years.[15]   As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers and other PII directly on various Internet websites, making the information publicly available, just as they have done here.

---

[13] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (2012), http://www.consumer.ftc.gov/articles/pdf-0009-taking-charge.pdf (last visited June 23, 2014).

[14] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id*.

[15] Companies, in fact, also recognize PII as an extremely valuable commodity akin to a form of personal property.  For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market. Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html.   *See also* T. Soma, ET AL, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009).

### III.    The Monetary Value of Privacy Protections

26.    At an FTC public workshop in 2001, then-Commissioner Orson Swindle described

the value of a consumer's personal information as follows:

> The use of third party information from public records, information
> aggregators and even competitors for marketing has become a
> major facilitator of our retail economy. Even [Federal Reserve]
> Chairman [Alan] Greenspan suggested here some time ago that it's
> something on the order of the life blood, the free flow of
> information.[16]

27.    Though Commissioner Swindle's remarks are more than a decade old, they are

even more relevant today, as consumers' personal data functions as a "new form of currency" that

supports a $26 billion per year online advertising industry in the United States.[17]

28.    The FTC has also recognized that consumer data is a new – and valuable – form of

currency.  In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones

Harbour, underscored this point by observing:

> Most consumers cannot begin to comprehend the types and amount
> of information collected by businesses, or why their information
> may be commercially valuable.  Data is currency.  The larger the
> data set, the greater potential for analysis – and profit.[18]

29.    Recognizing the high value that consumers place on their PII, many companies

now offer consumers an opportunity to sell this information to advertisers and other third parties.

The idea is to give consumers more power and control over the type of information that they share

---

[16] *The Information Marketplace: Merging and Exchanging Consumer Data*,
http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited June 23, 2014).
[17] *See Web's Hot New Commodity: Privacy*,
http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last
visited June 23, 2014) ("Web's Hot New Commodity: Privacy").
[18] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring
Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last
visited June 23, 2014).

– and who ultimately receives that information. And, by making the transaction transparent, consumers will make a profit from the surrender of their PII.[19] This business has created a new market for the sale and purchase of this valuable data.[20]

30.     Consumers place a high value not only on their PII, but also on the *privacy* of that data. Researchers have already begun to shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when [retailers'] privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[21]

31.     When consumers were surveyed as to how much they valued their personal data in terms of its protection against improper access and unauthorized secondary use – two concerns at issue here – they valued the restriction of improper access to their data at between $11.33 and $16.58 per website, and prohibiting secondary use to between $7.98 and $11.68 per website.[22]

32.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of that consumer's PII, like Home Depot, has deprived that consumer of the full monetary value of the consumer's transaction with the company.

### IV.     *Damages Suffered By Plaintiff and the Class*

33.     A portion of the services purchased from Home Depot by Plaintiff and the Class necessarily included compliance with industry-standard measures with respect to the collection

---

[19] *You Want My Personal Data? Reward Me for It*,
http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited June 23, 2014).
[20] *See supra*, fn.9.
[21] Hann et al., *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (last visited June 23, 2014); Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).
[22] *Id.*

and safeguarding of PII, including their credit and debit card information.  Because Plaintiff and the Class were denied privacy protections that they paid for and were entitled to receive, Plaintiff and the Class incurred actual monetary damages in that they overpaid for the services purchased from Home Depot.

34.     Plaintiff and the Class have suffered additional injury in fact and actual damages including monetary losses arising from unauthorized bank account withdrawals, fraudulent card payments, and/or related bank fees charged to their accounts.

35.     After the breach, Home Depot encouraged consumers to check their credit reports, place holds on their credit reports, and close any affected accounts.  However fraudulent use of cards might not be apparent for years.  Therefore, consumers must expend considerable time taking these precautions for years to come.

36.     Though Home Depot has offered one year of credit monitoring to affected customers, as Krebs notes, "credit monitoring services will do nothing to protect consumers from fraud on existing financial accounts – such as credit and debit cards – and they're not great at stopping new account fraud committed in your name."

37.     As a result of these activities, Plaintiff and the Class suffered additional damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Defendant's wrongful conduct, particularly given the incidents of actual misappropriation from Class members' financial accounts.

38.     Plaintiff and the Class suffered additional damages based on the opportunity cost and value of time that Plaintiff and the Class have been forced to expend to monitor their financial

and bank accounts as a result of the Breach.  Such damages also include the cost of obtaining replacement credit and debit cards.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings Count I, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure on behalf of a class defined as:

> All individuals who made an in-store purchase at a Home Depot location in the United States or Canada using a debit or credit card at any time from April 1, 2014 through September 10, 2014 (the "National Class").

Excluded from the National Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors.  Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

40.     Plaintiff brings Count II, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals residing in one of the Consumer Fraud States[23] who made an in-store purchase at a Home Depot location in the United

---

[23] The States that have similar consumer fraud laws based on the facts of this case are: Arkansas (Ark. Code § 4-88-101, *et seq.*); California (Cal. Bus. & Prof. Code §17200, *et seq.* and Cal. Civil Code § 1750, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Pennsylvania (73 P.S. § 201-1, *et seq.*); Rhode

States or Canada using a debit or credit card at any time from April
1, 2014 through September 10, 2014 (the "Multistate Class").

Excluded from the Multistate Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

41.     In the alternative to Count II, Plaintiff brings Count III, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following state sub-class, defined as:

All individuals residing in the State of Illinois who made an in-
store purchase at a Home Depot location in the United States or
Canada using a debit or credit card at any time from April 1, 2014
through September 10, 2014 (the "Illinois Class").

Excluded from the Illinois Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

42.     The National Class, Multistate Class, and Illinois Class are collectively referred to as the "Class," unless specifically indicated otherwise.

43.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that their individual joinder herein is impracticable. On information and

---

Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010,  *et seq.*); West Virginia (W. Va. Code § 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

belief, Class members number in the thousands to millions.  The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's books and records.  Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

45.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Such common questions of law or fact include:

   a.   Whether Home Depot failed to use reasonable care and commercially reasonable methods to secure and safeguard its customers' sensitive financial information;

   b.   Whether Home Depot properly implemented its purported security measures to protect customer financial information from unauthorized capture, dissemination, and misuse;

   c.   Whether Defendant's conduct violates the Illinois and other asserted Consumer Fraud Acts;

   d.   Whether Defendant's conduct constitutes breach of an implied contract; and

   e.   Whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief.

46.     Home Depot engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are

involved.  Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

47.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above and were thus all subject to the Breach alleged herein.  Further, there are no defenses available to Home Depot that are unique to Plaintiff.

48.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members he seeks to represent, he has retained counsel competent and experienced in complex class action litigation, and he will prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

49.    **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Home Depot.  The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

50.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**
Home Depot has acted or refused to act on grounds generally applicable to Plaintiff and the other
Class members, thereby making appropriate final injunctive relief and declaratory relief, as
described below, with respect to the members of the Class as a whole.

51.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**   A class action is
superior to any other available means for the fair and efficient adjudication of this controversy,
and no unusual difficulties are likely to be encountered in the management of this class action.
The damages or other financial detriment suffered by Plaintiff and the other Class members are
relatively small compared to the burden and expense that would be required to individually
litigate their claims against Home Depot, so it would be impracticable for Class members to
individually seek redress for Defendant's wrongful conduct.  Even if Class members could afford
individual litigation, the court system could not.  Individualized litigation creates a potential for
inconsistent or contradictory judgments, and increases the delay and expense to all parties and
the court system.  By contrast, the class action device presents far fewer management difficulties,
and provides the benefits of single adjudication, economy of scale, and comprehensive
supervision by a single court.

## CLAIMS ALLEGED

### COUNT I
### Breach of Implied Contract
### (On Behalf of the National Class)

52.     Plaintiff incorporates paragraphs 1-50 by reference as if fully set forth herein.

53.     Customers who intended to make purchases at Defendant's retail locations with debit or credit cards were required to provide their card's magnetic strip data for payment verification.

54.     In providing such financial data, Plaintiff and the other members of the Class entered into an implied contract with Home Depot whereby Home Depot became obligated to reasonably safeguard Plaintiff's and the other Class members' sensitive, non-public information.

55.     Plaintiff and the Class members would not have entrusted their private and confidential financial and personal information to Defendant in the absence of such an implied contract.

56.     Home Depot breached the implied contract with Plaintiff and the other members of the Class by failing to take reasonable measures to safeguard their financial data.

57.     Plaintiff and the other Class members suffered and will continue to suffer damages including but not limited to loss of their financial information and loss of money and costs incurred as a result of increased risk of identity theft, all of which have ascertainable value to be proven at trial.

## COUNT II
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
and Substantially Similar Laws of the Consumer Fraud States
(on Behalf of the Multistate Class)**

58.     Plaintiff incorporates paragraphs 1-50 by reference as if fully set forth herein.

59.     Plaintiff and the other members of the Class were deceived by Defendant's failure to properly implement adequate, commercially reasonable security measures to protect their private financial information while shopping at Home Depot.

60.     Home Depot intended for Plaintiff and the other members of the Class to rely on Home Depot to protect the information furnished to it in connection with their debit and credit card transactions in such manner that the transactions would be protected, secure, and not susceptible to access from unauthorized third parties.

61.     Home Depot instead handled Plaintiff's and the other Class members' personal information in such manner that it was compromised.

62.     Home Depot failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.

63.     It was foreseeable that Defendant's willful indifference or negligent course of conduct in handling its customers' personal information would put that information at risk of compromise by data thieves.

64.     Home Depot benefited from mishandling its customers' personal information because, by not taking preventative measures that would have prevented the data from being compromised, Home Depot saved on the cost of those security measures.

65.     Defendant's fraudulent and deceptive acts and omissions were intended to induce Plaintiff's and the other Class members' reliance on Defendant's deception that their financial information was secure and protected when using debit and credit cards to shop at Home Depot.

66.     Home Depot violated 815 ILCS 505/2 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiff's and the other Class members' private financial information, by failing to warn shoppers that their information was at risk, and by failing to discover and immediately notify affected customers of the nature and extent of the Breach.

67.     Defendant's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

68.     Defendant's conduct constitutes unfair acts or practices as defined in that statute because Home Depot caused substantial injury to Class members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

69.     In addition, Home Depot also engaged in an unlawful practice by failing to comply with 815 ILCS 530/10(a), which provides:

> Sec. 10. Notice of Breach. (a) Any data collector that owns or licenses personal information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach. The disclosure notification shall be made in the most expedient time possible and without unreasonable delay, consistent with any measures necessary to determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data system

70.     815 ILCS 530/20 provides that a violation of 815 ILCS 530/10 "constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act."

71.     Plaintiff and the other members have suffered injury in fact and actual damages including lost money and property as a result of Defendant's violations of 815 ILCS 505/2.

72.     Plaintiff's and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

73.     By this conduct, Home Depot violated the substantive consumer protection and unfair deceptive trade practices acts or statutes of the Consumer Fraud States, whose laws do not materially differ from that of Illinois, or conflict with each other for purposes of this action.

## COUNT III
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (In the alternative to Count II and on Behalf of the Illinois Class)

74.     Plaintiff incorporates paragraphs 1-50 by reference as if fully set forth herein.

75.     Plaintiff and the other members of the Class were deceived by Defendant's failure to properly implement adequate, commercially reasonable security measures to protect their private financial information while dining at Home Depot.

76.     Home Depot intended for Plaintiff and the other members of the Class to rely on Home Depot to protect the information furnished to it in connection with their debit and credit card transactions, in such manner that the transactions would be protected, secure, and not susceptible to access from unauthorized third parties.

77.     Home Depot instead handled Plaintiff's and the other Class members' personal information in such manner that it was compromised.

78.     Home Depot failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.

79.     It was foreseeable that Defendant's willful indifference or negligent course of conduct in handling its customers' personal information would put that information at risk of compromise by data thieves.

80.     Home Depot benefited from mishandling its customers' personal information because, by not taking preventative measures that would have prevented the data from being compromised, Home Depot saved on the cost of those security measures.

81.     Defendant's fraudulent and deceptive acts and omissions were intended to induce Plaintiff's and the other Class members' reliance on Defendant's deception that their financial information was secure and protected when using debit and credit cards to shop at Home Depot.

82.     Home Depot violated 815 ILCS 505/2 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiffs' and the other members' private financial information, by failing to warn shoppers that their information was at risk, and by failing to discover and immediately notify affected customers of the nature and extent of the Breach.

83.     Defendant's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

84.      Defendant's conduct constitutes unfair acts or practices as defined in that statute because Home Depot caused substantial injury to Class members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

85.     In addition, Home Depot also engaged in an unlawful practice by failing to comply with 815 ILCS 530/10(a), which provides:

> Sec. 10. Notice of Breach. (a) Any data collector that owns or licenses personal information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of

> the breach. The disclosure notification shall be made in the most
> expedient time possible and without unreasonable delay, consistent
> with any measures necessary to determine the scope of the breach
> and restore the reasonable integrity, security, and confidentiality of
> the data system

86.     815 ILCS 530/20 provides that a violation of 815 ILCS 530/10 "constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act."

87.     Plaintiff and the other Class members have suffered injury in fact and actual damages including lost money and property as a result of Defendant's violations of 815 ILCS 505/2.

88.     Plaintiff's and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive behavior, which was conducted with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this complaint so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Home Depot, as follows:

A.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Class;

B.     Ordering Home Depot to pay actual damages to Plaintiff and the other members of the Class;

C.     Ordering Home Depot to pay for not less than three years of credit card monitoring services for Plaintiff and the other members of the Class;

D.      Ordering Home Depot to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

E.      Ordering Home Depot to pay statutory damages, as provided by the Illinois Consumer Fraud and Deceptive Business Practices Act and other applicable State Consumer Fraud Acts, to Plaintiff and the other members of the Class;

F.      Ordering Home Depot to disseminate individualized notice of the Breach to all Class members and to post notice of the Breach in all of its affected stores;

G.      Ordering Home Depot to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

H.      Ordering Home Depot to pay both pre- and post-judgment interest on any amounts awarded; and

I.      Ordering such other and further relief as may be just and proper.


Dated: September 10, 2014                  Respectfully submitted,

                                           VINCE MURPHY, individually and on behalf of all others similarly behalf of all others similarly situated


                                           /s/ Jason R. Doss
                                           Jason Doss, Esq.
                                           Georgia Bar No. 227117
                                           The Doss Firm, LLC
                                           36 Trammell St, #101
                                           Marietta, GA 30064
                                           Phone: 770-578-1314
                                           Fax:770-578-1302
                                           jasondoss@dossfirm.com

Katrina Carroll, Esq. (*pro hac vice*)
*kcarroll@litedepalma.com*
Kyle A. Shamberg, Esq. (*pro hac vice*)
kshamberg@litedepalma.com
**Lite DePalma Greenberg, LLC**
211 W. Wacker Drive
Suite 500
Chicago, Illinois 60606
312.750.1265